We will hear argument first today in No. 231815, Avago Technologies v. Netflix. Mr. Young. Thank you, Your Honor. May it please the Court, Dan Young for Avago Technologies. With respect to the Challenge Claim 1, the Board's findings with respect to Limitations 1b, 1c, and 1d lack substantial evidence, specifically with respect to Limitation 1b, the Patrick reference, which is the prior reference relied on by the Board, does not disclose the determination of an initial transmission rate using a real-time determination of available bandwidth between the server and the client. Patrick does make a determination, and what this determination is is without dispute. In fact, Patrick determines the available bandwidth for accelerated streaming, which acts as an upper limit or threshold to what the actual streaming may be. So Patrick goes through and determines what this threshold is, and the actual streaming is not determined prior to transmission. Is your argument here contingent on our agreeing with you that Paragraph 38, for example, of the Patrick reference, doesn't relate to Step 204 at all? I believe it's Step 206, Your Honor, but yes. Yes, Step 206, thank you. So to skip ahead to Paragraph 38, with respect to how Patrick goes through ---- Did you answer my question? Your Honor? I asked whether your argument, just your argument that you're presenting, that you just mentioned, whether that's contingent on the understanding, your suggestion, that Paragraph 38 doesn't relate to Step 206. I know, Your Honor. And the reason for that is even if the Court were to accept the Board's findings in totality with respect to Paragraph 38, which we disagree with for the many reasons in the briefing, but if the Court were to accept that, at the end of the day what you still have is that the network conditions, which is what the Board relied on as part of Paragraph 38, would impact the determination of that threshold, but it would not ---- there's no evidence that those network conditions would determine the actual transmission rate. Because remember, Limitation 1B says you have to determine the transmission rate, and that's based on a real-time determination of the available communication bandwidth between the server and the client. To make a very clear point on this, there's nothing in Patrick that discloses the determination of the initial transmission rate before transmission. So even if the Court were to accept everything the Board found with respect to Paragraph 38, you would still have a calculation in Patrick of that upper threshold, but then the actual transmission, which is in Act 208 of the Patrick reference, that is the actual transmission rate. And to take a step back, this makes sense, because if you look at Figure 2 of Patrick, and you look at the server, there are two specifically different elements as part of that server. You have the Accelerated Streaming Control Module 150. That's what does Act 202, 204, 206, and that's the control module. But that's not what's actually doing the streaming. The streaming itself is with Streaming Module 144. And there's nothing in the Patrick reference that says the Accelerated Streaming Control Module tells or dictates to the Streaming Module 144 what the actual transmission rate is going to be. What actually happens is the Control Module 150 sets up these thresholds, an upper threshold and a lower threshold. And the Board specifically found that that's what the Available Bandwidth for Accelerated Streaming is. On page 18 of the final written decision of the Board, the Board specifically says that this Available Bandwidth for Accelerated Streaming, which is determined in Act 206, acts as an upper threshold or limit. That's not in dispute. What the Board then found was that the actual determination, that would have been an obvious thing. Because the Board knows that there's no actual determination of the initial transmission rate that is determined using a real-time determination of the Available Bandwidth between the server and the client. That's never disclosed in Patrick. Not a word. The Board understood that and said, well, it would have been obvious. Now, they don't rely on another reference other than Patrick. I'm sorry. Obvious to simply use the determined maximum that is conceivably in Patrick? No, Your Honor. They said that it would be obvious to determine an initial transmission rate based on a real-time determination of the Available Communication Bandwidth between the server and the client, which is not disclosed in Patrick. The upper limit is disclosed, for sure. That's what I mean. So if you assume that Patrick discloses an upper limit on a transmission rate, that you think it's not obvious to a skilled artisan reader, use it? Oh, no, no, Your Honor. That's not at all what I'm saying. The threshold is absolutely used. There's two thresholds in Patrick. There is the upper threshold, which is what's determined in Act 206, and then the steady state. What Patrick says is you set these limits, and then you transmit between them. That's why I was saying that the Control Module 150 sets those limits. But the actual transmission rate, what's actually transmitted, is with the Streaming Module 144. And is there something in Patrick that talks about the Streaming Module making a decision about the rate at which to stream or just to carry out the transmission? The latter, Your Honor. So who in Patrick is deciding what at least the initial transmission rate will be? Isn't it obvious that if the Streaming Module isn't making the decision, that one thing Patrick would render obvious is use the upper limit that the only decision maker calculated? The upper limit is, and this goes back to the underlying purpose of Patrick, the upper limit is based on the server load. In other words, what can the server actually do? But it doesn't have any determination of what the 098 patent says, which is what you do, this real-time determination of what you can actually transmit. What Patrick is saying is you look at the server, and that limit is used as an upper limit. But what 144 does is it starts transmitting. In fact, in paragraph 39, it gives you an example. And it says, well, you can start sending data from the receiver to the client, wait for an acknowledgement, but then you're not going to know the actual transmission rate until you've already begun streaming. And that's to bleed into limitation 1C. What happens in 1C is you make the determination of what the transmission rate is going to be in 1B. And then in 1C, you start transmitting at that initial transmission rate. So you have to make the determination in step B, and then you transmit in step C. What Patrick does in paragraph 39, it says expressly, is you start transmitting. Now, you've got to transmit lower than the upper limit and higher than the lower limit. But then what you actually transmit is not determined until transmission has begun. And that's one of the fundamental distinctions between Patrick and claim 1 of the 098 patent. Because in the 098 patent, you set the transmission rate first, and then you run it for a period of time. And then if there's a change in the available communication bandwidth between the server and the client, then you would recalculate to a second transmission rate for the rest of that first period. I don't remember exactly, but did the board find that Patrick taught the calculation of the rate at which the processor could spit things out and the rate at which the wire could transmit what is spit out? The processor bandwidth, I think, is sometimes how it was talked about, and the carrier bandwidth is sometimes how it was talked about. I thought that the board disagreed with your argument that Patrick taught only the processor bandwidth. And increasingly, as you're describing things here, it seems to me your argument is coming down to disagreeing with the board's finding about that. Your Honor, I hope I understand your question. What the board found was that Patrick taught the upper and lower limit, and the board found that it would have been obvious for Patrick to modify Patrick. Again, a single reference. There's no other reference to combine it with. That a person who is still not reading Patrick would have also found that it was obvious to make this determination of the initial transmission rate. And that's where, to answer the previous question from Judge Fulton, the paragraph 38 is irrelevant. Paragraph 38 deals with whether network conditions impact the upper or lower limit. That's all that the board found with regard to paragraph 38. The board took another step and said, in addition to these upper and lower limits, it would have been obvious for the server to calculate an initial transmission rate based on the upper and lower limit. Our position is none of the paragraphs cited by the board talk about the actual transmission rate being determined prior to actual transmission. There's absolutely discussion about the determination of the upper and lower limit prior to transmission. I hope hopefully that answered your question. And then with respect to Claim 1, lastly with Element D, the structure with Claims Elements B, C, and D is you determine an initial transmission rate for a first period, and it's based on the real-time determination of the available bandwidth between the server and the client. You start the transmission. That available bandwidth between the server and the client changes. Then you make a second determination of a second transmission rate to then transmit for the balance of the first period. And the board simply relied on paragraph 45 to say that all of these steps 204 through 208 get re-evaluated periodically. Well, if you never made the first determination for the first transmission rate, there's no determination of the first period of time. Obviously then there's also no disclosure of determining a second transmission rate and then transmitting for that balance of the first period. So with respect to the board's findings, with respect to Elements B, C, and D, we argue that that lacks substantial evidence because even if the court were to accept the board's evaluation of paragraph 38, again, that's only the upper and lower limit. It's not related to the actual transmission rate that Elements B, C, and D require. Can I ask you what you just said? I mean, the board, in its opinion, specifically cited paragraph 38 for the proposition that Patrick disclosed that the amount of bandwidth can vary based on the current conditions of the network coupling the server and client devices. And then they say as a result, we agree that it would have been obvious to measure the available communications bandwidth between the server and the client. I mean, you're not disputing that that's factually, that there's substantial evidence to support that, right? Or are you? I mean, there's expert testimony to support that. So that's why I'm struggling a little bit. Your Honor, our position is certainly with respect to if you read Patrick as a whole, that paragraph 38 clearly talks about the network communications being directed to the upper limit and the lower limit, not the actual transmission rate. But even if you were to accept all of that, there's no disclosure in Patrick whatsoever that you make this measurement of a real-time determination of the bandwidth between the server and the client and then use that to then calculate the actual transmission rate. There is no evidence at all that an actual transmission rate is determined by Patrick prior to transmitting. And then just one last quick thing with respect to claim. You're well into your rebuttal time. Yes, Your Honor. With respect to claim 7, this predetermined latency goal only talks about increasing the bandwidth based on this factor. But there's no discussion at all of how that would actually work with Patrick, how you'd actually take the Madawi reference, use this factor, and adjust the upper and lower limits, which are based on server load, based on this factor. There's no discussion at all of how that would be done. So we also argue that that would be a lack of substantial evidence with respect to that finding as well. Okay. Thank you. May it please the Court. Harper Batts on behalf of Appellee Netflix. I guess I would start off by saying I don't think there's any dispute here that we're under the substantial evidence standard here today for review. I was a little thrown off, I guess, by I thought Judge Stoll's question early on. I thought we were going to be arguing about Paragraph 38, disclosures of Paragraph 38. That was the majority of their briefing. But I can walk through the arguments of that. I don't even recall them mentioning the streaming module in their brief, either brief before this court. So I'm a little surprised by the argument about the streaming module. But I do think, if we start off, Appellant has continually argued that Patrick's determination of available bandwidth is based upon only server load. And you heard that again today where he's talking about the upper limit or server load or based upon the server. They gave up that argument and still replied before the board. But they reprised it here in the opening brief. And I just have a few citations, pages 42 to 44. And then, again, on opening brief, page 63, they say, Patrick teaches determining transmission rate using only the server load. We showed that to be untrue. We showed that the board explained and relied upon our arguments about Paragraph 38. Did you show that to be untrue by relying on Paragraph 38, your expert did? Not just 38, Your Honor. We relied on Paragraphs 31 through 35, where they also talked about different factors that would be considered for the rate, including a requester sending a requested rate for the transmission. So there's clearly other teachings in Patrick that went beyond just server load for the available bandwidth determination prior to reaching Paragraph 38. And so in terms of this upper limit or this threshold argument, I think if we turn to Paragraphs 34 and 35, it's quite instructive. Because those paragraphs, which were relied upon the board in combination with Paragraph 17, let me slow down, let me start with 17. So Paragraph 17, which the board relied upon, sorry, Paragraph 19, includes the streaming control module. It introduces the streaming control module. Are you looking, did you say Paragraph 19? 19, yes. A762? 762. Thank you. It says that the streaming control module is what determines an appropriate rate for accelerated streaming. So the module that's determining the rate, and he kept on talking about a limit versus a rate, Patrick uses the term rate. And it's talking about you're determining a rate for accelerated streaming. If we now turn to Patrick on Paragraphs 34 and 35 on Appendix 763 and 764, and these are the paragraphs that the board cited to in the final written decision on this point, it talks about the rate that is being determined in Act 206 from Figure 3. And that's before transmission starts. You're determining this rate. And it says the various ways that the rate can be determined, including, as I mentioned earlier, the very first sentence of Paragraph 34 talks about the rate can be determined based in part on a rate requested by the requester. So it's not simply server load. There's different factors, and they go through 34 and then into 35. They talk about what is the rate for this transmission. And then that rate is being used by, is being determined by, and then the very top of 764, that very first line from Paragraph 34, the rate determined by Control Module 150. So I think Patrick's teachings are very straightforward in terms of explaining how a rate is determined. The rate is determined in Act 206. I do think counsel mixed two different findings by the board in the final written decision. The board looked at Paragraph 38 and said, and I think you noted that language from the bottom of Final Decision 31, and there's some other portions of the decision that are talking about Patrick's Paragraph 38 teaches that you use the bandwidth, the network bandwidth, as part of the determination of the rate. The board also said that it would have been obvious looking at Patrick's teachings to make that determination, and it relied upon the support of both experts that said at this time period it was known how to do this. There's like 10 or 15 different techniques we cited out in our briefing. There's many different techniques that could be used to determine the network bandwidth. So I think I'm happy to answer any questions, but I believe that addresses counsel's questions. You started by saying that a certain argument being made to us today was waived in your view in their CERB reply. Can you show us where that is, where that waiver happened, if I understood you correctly? Yes. I was pointing to their argument that available bandwidth depends only on CERB, on server load. They admitted, and also even here in their reply brief, they admitted that, well, there are other factors. So if we look at their reply brief on page 3. That's their reply to us. To you. They said, well, yes, but that's a property of the requester. So they tried to turn the argument where they're saying it's only about server load. Where are you on page 3? Page 3 of the reply. Yeah. Where are you on it? And they say it is clearly a property of the requester. First paragraph. Thank you. Yes. The italicized requester. Yes. And the point being there is, our point was, they were the ones that argued that the available bandwidth was only being determined based upon server load. So then we said, hey, if you look at these other paragraphs, paragraphs 34 and 35, clearly there are other factors, such as, for example, a rate requested by a requester. That's not based upon the server. In turn, they said, well, yes, that's something that's other than the server load, but that's still not a determination based upon the network bandwidth. And we're not contending it's the network bandwidth. We're saying that Patrick is looking at numerous other factors other than just server load for that available bandwidth determination. Paragraphs 34 and 35 include some. And then paragraph 38 includes others. I may have missed it. Did you identify a joint appendix page for the SIR reply below? I did not. Let me see if I have that handy. I do not have it handy. I apologize. But it is there, and it was in the appendix. No further questions? Thank you. Thank you, Honor. Since I have just a little bit of time here, one thing that's important to understand is that Netflix's counsel made this distinction between a rate and a limit. But the limit is also a rate. I mean, these are all bits per second or megabits or gigabits per second. So just because you're saying, well, the term rate shows up with respect to, in some instances, like paragraph 19 for this upper limit, the limit is a rate. But the actual transmission rate, right, the initial rate that the bits go out of the server at, that is not going to be what the – that's not the rate set by the upper limit. That's a boundary. But that is still a rate. So just the actual transmission rate and the limit are still rates, if that makes sense. So just because Patrick uses the term rate, it doesn't mean that – it's not like the limit is some other unit of data and time. It's the same thing. So, yes, Patrick does talk about, and I think that might be one of the things that contributed to the board's findings, is that it does use the term rate with respect to this upper limit. But that's the only determination that's made. And, in fact, if that wasn't the case, then paragraph 39 would not have made any sense, because that says you don't even know what the rate is until transmission has actually begun. And with respect to what goes into the factors that – or what goes into this determination of the rate, I'm not sure that actually matters. Yes, paragraph 19 says that it's this – the appropriate rate for the accelerated streaming – again, that's what Act 206 determines, right – is based on bandwidth load of the server device, 146. That's exactly what it says. And there's other places where it talks about server load. Now, once that determination is made by server load, there are other things, as counsel had noted, other things that may adjust that. But at the end of the day, those are still just limits. That's not the actual transmission rate. There's not a determination of the initial transmission rate based on this real-time measurement between the server and the client. Thank you, Your Honor. Thank you. Thanks to both parties. Case is submitted.